UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRIAN CHASTAIN,

        Plaintiff,

v.

STEPHANIE WEAST et al.,

        Defendants.
_____/

Case No. 1:24-cv-1056

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint[1] for failure to state a claim against Defendants Collins and Shultz. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Weast: official capacity

---

[1] The Court previously provided *pro se* Plaintiff with an opportunity to amend his complaint, noting that "[i]f Plaintiff fails to submit an amended complaint in proper form within the time allowed, the Court will review Plaintiff's complaint as it stands." (Order, ECF No. 4, PageID.26.) Plaintiff did not file an amended complaint in response to the Court's order. Therefore, Plaintiff's original complaint (ECF No. 1) is the operative complaint in this matter.

claims and any intended claims *other than* Plaintiff's Eighth Amendment claim regarding Defendant Weast's failure to order the helmet and wheelchair during Plaintiff's incarceration at DRF. Plaintiff's Eighth Amendment medical care claim against Defendant Weast in her individual capacity regarding Weast's failure to order the helmet and wheelchair during Plaintiff's incarceration at DRF will remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility in New Haven, Macomb County, Michigan. The events about which he complains occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan, and the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. Plaintiff sues the following DRF staff in their individual and official capacities: Dr. Stephanie Weast; and Corrections Officers Unknown Collins and Unknown Shultz. (Compl., ECF No. 1, PageID.2–3.)

In Plaintiff's complaint, he states that since he was a child, he has had "'grandma' seizures," which the Court assumes is a reference to "grand mal" seizures.[2] (*Id.*, PageID.7.) Plaintiff explains that his "epilepsy causes him to have [grand mal] seizures" in which he "loses consciousness and falls into multiple convulsions." (*Id.*) In 2020, while incarcerated with the MDOC at an unspecified facility, "health care ordered a special accommodation detail for Plaintiff to have a wheelchair and helmet." (*Id.*)

---

[2] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

At some point while Plaintiff was incarcerated at DRF,[3] Plaintiff "lost consciousness and beg[a]n to convulse into another seizure and fell out of the chair." (*Id.*, PageID.8.) Defendants Collins and Shultz "placed Plaintiff back into the chair while [he was] still convulsing from repeated seizures instead of ensur[ing] that Plaintiff was not cho[]king and waiting for medical staff." (*Id.*) Defendants Collins and Shultz then "attempted to push [Plaintiff] further down the sidewalk where [Plaintiff] stopped shaking for a few seconds and this time lost consciousness [and] convulsed into seizures." (*Id.*) Plaintiff "fell out of the chair splitting his head open on the concrete and busting his lip[, and] breaking one tooth and [half] of another." (*Id.*) Plaintiff claims that Defendants Collins and Shultz failed "to secure [Plaintiff] in the wheelchair." (*Id.*, PageID.10.)

Plaintiff was then transferred to the hospital "due to breaking several facial bones on the second fall causing him to need surgery, 5 sti[t]ches in his head and 2 sti[t]ches in his lip." (*Id.*, PageID.8.) Upon Plaintiff's return to DRF, he asked Defendant Weast "why his special accommodation detail for the helmet and wheelchair had not been followed" and "she had failed to order the helmet."[4] (*Id.*) Plaintiff also claims that "Defendant Weast is the doctor who refused to order [his] wheelchair and soft padded helmet." (*Id.*, PageID.5.)

---

[3] In response to a question on the form complaint, Plaintiff states that the events giving rise to his claims occurred on "April 21[]st, Sept. 2024, and August 7th[,] 2024." (Compl., ECF No. 1, PageID.6.) However, when setting forth his factual allegations, Plaintiff does not indicate on which dates the specific events occurred. (*See id.*, PageID.7–8.)

[4] In setting forth this allegation regarding the special accommodation detail, Plaintiff states, in full: "Plaintiff asked Doctor Weast why his special accommodation detail for the helmet and wheelchair had not been followed and Plaintiff refused to where [sic] the helmet, yet she had failed to order the helmet." (Compl., ECF No. 1, PageID.8.) Plaintiff's statements about refusing "to where [sic] the helmet" and about Weast failing to order the helmet are contradictory. The Court need not resolve this contradiction at this time. At this stage of the proceedings, the Court liberally construes *pro se* Plaintiff's complaint, as the Court is required to do, and assumes, without deciding, that Plaintiff intended to allege that Defendant Weast "failed to order the helmet." (*Id.*)

Subsequently, at an unspecified time, Plaintiff was transferred to SRF, and he lost consciousness and "fell to the floor splitting his head yet again." (*Id.*, PageID.8.)

Plaintiff claims that he requires "a helmet and wheelchair to prevent further injury due to epilepsy and was not ordered a helmet nor wheelchair." (*Id.*, PageID.9.)

Based on the foregoing allegations, Plaintiff alleges that Defendants violated his Eighth Amendment rights. (*Id.*, PageID.4, 5 (referencing the use of "excessive force" and deliberate indifference to Plaintiff's "health and safety").) Plaintiff seeks a declaratory judgment and monetary damages. (*Id.*, PageID.9.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

4

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2–3.)

As to any Defendants employed by a private entity that contracts with the state to provide healthcare to inmates, Plaintiff's official capacity claims are treated as a suit against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). A private entity that contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*,

974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Here, Plaintiff fails to allege the existence of a custom or policy, let alone that any custom or policy was the moving force behind his alleged constitutional injury. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action, or claim, for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987). Furthermore, liberally construing Plaintiff's complaint, as the Court is required to do, even if Plaintiff intended to suggest the existence of a custom, his allegations are wholly conclusory. *Cf. Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Therefore, because Plaintiff fails to allege the existence of a policy or custom, all of Plaintiff's official capacity claims against any Defendants employed by a private entity that contracts with the state to provide healthcare to inmates will be dismissed.

As to any Defendants employed by the MDOC, a suit against these Defendants in their official capacities is equivalent to a suit against the MDOC. *See Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). In this context, Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages and declaratory relief. (Compl., ECF No. 1, PageID.9.) However, an official capacity defendant employed by the state is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against any Defendants employed by the MDOC in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot

7

have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at DRF, which is where he avers that Defendants are employed. Thus, Plaintiff cannot maintain his claims for declaratory relief against Defendants.

Therefore, for all of the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

**B.     Defendant Weast**

Plaintiff's complaint is not a model of clarity. Liberally construing *pro se* Plaintiff's complaint, as the Court is required to do at this stage, the Court construes Plaintiff's complaint to

raise an Eighth Amendment medical care claim against Defendant Weast regarding Weast's failure to order a helmet and wheelchair for Plaintiff's use. (*See* Compl., ECF No. 1, PageID.4, 5.)

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### 1. Objective Component

In Plaintiff's complaint, he states that since he was a child, he has had grand mal seizures. (Compl., ECF No. 1, PageID.7.) Plaintiff explains that his "epilepsy causes him to have [grand mal] seizures" in which he "loses consciousness and falls into multiple convulsions." (*Id.*) At this stage of the proceedings, the Court concludes that Plaintiff has adequately alleged facts to satisfy the objective component of the relevant two-prong test.

**2.    Subjective Component**

Here, Plaintiff alleges that in 2020, while incarcerated with the MDOC at an unspecified facility, "health care ordered a special accommodation detail for Plaintiff to have a wheelchair and helmet." (*Id.*) Plaintiff also alleges that while incarcerated at DRF, after Plaintiff's return to DRF following a hospital visit for the injuries that Plaintiff sustained during the seizure in which Defendants Collins and Shultz were present, Plaintiff asked Defendant Weast "why his special accommodation detail for the helmet and wheelchair had not been followed" and "she had failed to order the helmet." (*Id.*, PageID.8.) Plaintiff claims that "Defendant Weast is the doctor who refused to order [his] wheelchair and soft padded helmet." (*Id.*, PageID.5.) Plaintiff also alleges that at an unspecified time, Plaintiff was transferred to SRF, and he lost consciousness and "fell to the floor splitting his head yet again." (*Id.*, PageID.8.)

As to Plaintiff's allegation that during Plaintiff's incarceration at DRF, Defendant Weast was involved in the failure to order Plaintiff a helmet and wheelchair pursuant to his "special accommodation detail," although Plaintiff's allegations lack some specificity and are not a model of clarity, the Court will not dismiss this Eighth Amendment medical care claim against Defendant Weast on initial review.[5]

However, as explained below, the Court will dismiss any other intended claims against Defendant Weast for failure to state a claim. Specifically, Plaintiff alleges no facts to suggest that Defendant Weast was involved in the initial ordering of the "special accommodation detail" in

---

[5] Plaintiff alleges that Defendant Weast failed to order Plaintiff a wheelchair and helmet pursuant to Plaintiff's medical accommodation detail. The Court notes that in setting forth his allegations regarding the incident with Defendants Collins and Shultz, Plaintiff references being in a wheelchair, suggesting that at least on some occasions, Plaintiff was permitted to use a wheelchair at DRF. Nonetheless, although Plaintiff's allegations regarding Defendant Weast's failure to order Plaintiff a wheelchair and helmet pursuant to Plaintiff's medical accommodation detail are somewhat conclusory jand vague, the Court will not dismiss these claims on initial review.

10

2020 or in Plaintiff's subsequent incarceration at SRF. Therefore, Plaintiff fails to state a claim against Defendant Weast regarding these other events. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Accordingly, any intended claims against Defendant Weast *other than* Plaintiff's claim regarding Defendant Weast's failure to order the helmet and wheelchair during Plaintiff's incarceration at DRF will be dismissed for failure to state a claim.

    **C.**    **Defendants Collins and Shultz**

As to Defendants Collins and Shultz, Plaintiff alleges that Collins and Shultz were deliberately indifferent to his serious medical needs when they were present on one occasion when Plaintiff had multiple seizures and that their actions during this incident resulted in "excessive force" against Plaintiff. (Compl., ECF No. 1, PageID.4, 5.) The Court first addresses Plaintiff's excessive force claims against Defendants Collins and Shultz.

    **1.**    **Eighth Amendment Excessive Force Claims**

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth

11

Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that at some point during his incarceration at DRF, Plaintiff "lost consciousness and beg[a]n to convulse into another seizure and fell out of the chair." (Compl.,

12

ECF No. 1, PageID.8.) Defendants Collins and Shultz were present and "placed Plaintiff back into the chair while [he was] still convulsing from repeated seizures" and "attempted to push [Plaintiff] further down the sidewalk where [Plaintiff] stopped shaking for a few seconds and this time lost consciousness [and] convulsed into seizures." (*Id.*) Plaintiff "fell out of the chair splitting his head open on the concrete and busting his lip[, and] breaking one tooth and [half] of another." (*Id.*)

Plaintiff alleges that Defendants Collins and Shultz failed "to secure [Plaintiff] in the wheelchair," and he claims that the actions of Defendants Collins and Shultz resulted in a "use [of] excessive force." (*Id.*, PageID.5, 10.) However, the factual allegations in Plaintiff's complaint do not support an excessive force claim against Defendants Collins and Shultz. Although Plaintiff alleges that the actions of Defendants Collins and Shultz during Plaintiff's seizures resulted in Plaintiff sustaining several injuries, Plaintiff does not allege that Defendants Collins and Shultz used any force against Plaintiff. Therefore, Plaintiff necessarily fails to allege any facts suggesting that Defendants Collins and Shultz used force against him "maliciously and sadistically." *See Hudson*, 503 U.S. at 7; *Williams*, 631 F.3d at 383. Accordingly, Plaintiff's Eighth Amendment excessive force claim against Defendants Collins and Shultz will be dismissed for failure to state a claim.

### 2. Eighth Amendment Deliberate Indifference Claims

In addition to Plaintiff's excessive force claim against Defendants Collins and Shultz, Plaintiff alleges that during Plaintiff's seizures at DRF, Defendants Collins and Shultz were deliberately indifferent to Plaintiff's serious medical needs. (*See* Compl., ECF No. 1, PageID.5.)

To state an Eighth Amendment deliberate indifference claim against Defendants Collins and Shultz, Plaintiff must allege sufficient facts to satisfy the objective and subjective components of an Eighth Amendment claim. *See supra* Section II.B. (setting forth the legal standard for an Eighth Amendment claim). As discussed above, at this stage of the proceedings, the Court

13

concludes that Plaintiff's epilepsy and grand mal seizures constitute a serious medical need. *See supra* Section II.B.1. Plaintiff has therefore alleged sufficient facts to satisfy the objective component of the relevant two-prong test.

With respect to the subjective component, Plaintiff alleges that after Plaintiff's first seizure in Defendants Collins's and Shultz's presence, Collins and Shultz "placed Plaintiff back into the chair while [he was] still convulsing from repeated seizures instead of ensur[ing] that Plaintiff was not cho[]king and waiting for medical staff." (Compl., ECF No. 1, PageID.8.) Plaintiff further alleges that Defendants Collins and Shultz then "attempted to push [Plaintiff] further down the sidewalk where [Plaintiff] stopped shaking for a few seconds and this time lost consciousness [and] convulsed into seizures." (*Id.*) Plaintiff then "fell out of the chair" and sustained several injuries, which resulted in Plaintiff being taken to the hospital. (*Id.*) Plaintiff claims that Defendants Collins and Shultz failed "to secure [Plaintiff] in the wheelchair." (*Id.*, PageID.10.)

The Court notes that correctional officials who have no training or authority to supervise healthcare officials are entitled to rely on medical provider's judgment and cannot be held liable for healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials). However, in Plaintiff's case, Defendants Collins and Shultz acted on their own during Plaintiff's seizures, and they were not relying on medical

personnel's instructions or decisions. Nonetheless, Plaintiff's allegations do not show that Defendants Collins and Shultz acted with deliberate indifference during Plaintiff's seizures. Although it is clear that Plaintiff believes that Defendants Collins and Shultz should have "ensur[ed] that Plaintiff was not cho[]king and wait[ed] for medical staff," rather than placing Plaintiff back in his chair, and that they failed "to secure [Plaintiff] in the wheelchair" (Compl., ECF No. 1, PageID.8, 10), Plaintiff's allegations do not suggest that Collins and Shultz, both of whom are identified as non-medical correctional officers, were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" to Plaintiff and "also drew the inference" when they placed Plaintiff back in his chair following the first seizure. *Farmer*, 511 U.S. at 837. Instead, at most, Plaintiff's allegations suggest that Defendants Collins and Shultz acted negligently during the interaction with Plaintiff. However, an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *Id.* at 835. Therefore, based on the facts alleged in Plaintiff's complaint, Plaintiff has failed to show that Defendants Collins and Shultz were deliberately indifferent to Plaintiff's health and safety. Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Collins and Shultz will be dismissed for failure to state a claim.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Collins and Shultz will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Weast: official capacity claims and any intended claims *other than* Plaintiff's Eighth Amendment claim regarding Defendant Weast's failure to order the helmet and wheelchair during Plaintiff's incarceration at DRF. Plaintiff's Eighth Amendment medical care claim against

Defendant Weast in her individual capacity regarding Weast's failure to order the helmet and wheelchair during Plaintiff's incarceration at DRF remains in the case.

An Order consistent with this Opinion will be entered.


Dated:    January 24, 2025                     /s/ Jane M. Beckering
                                               Jane M. Beckering
                                               United States District Judge